**ALICE PHELAN SULLIVAN CORPORA- TION, a California corporation**

v.

**The UNITED STATES.**

**No. 214-64.**

United States Court of Claims.
July 20, 1967.

Robert V. Campbell, San Francisco, Cal., attorney of record, for plaintiff. Cushing, Cullinan, Hancock & Rothert, San Francisco, Cal., of counsel.

Mason C. Lewis, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

COLLINS, Judge.

Plaintiff, a California corporation, brings this action to recover an alleged overpayment in its 1957 income tax. During that year, there was returned to taxpayer two parcels of realty, each of which it had previously donated and claimed as a charitable contribution deduction. The first donation had been made in 1939; the second, in 1940. Under the then applicable corporate tax rates, the deductions claimed ($4,243.49 for 1939 and $4,463.44 for 1940) yielded plaintiff an aggregate tax benefit of $1,877.49.[1]

Each conveyance had been made subject to the condition that the property be used either for a religious or for an educational purpose. In 1957, the donee decided not to use the gifts; they were therefore reconveyed to plaintiff. Upon audit of taxpayer's income tax return, it was found that the recovered property was not reflected in its 1957 gross income. The Commissioner of Internal Revenue disagreed with plaintiff's characterization of the recovery as a nontaxable return of capital. He viewed the transaction as giving rise to taxable income and therefore adjusted plaintiff's income by adding to it $8,706.93—the total of the charitable contribution deductions previously claimed and allowed. This addition to income, taxed at the 1957 corporate tax rate of 52 percent, resulted in a deficiency assessment of $4,527.60. After payment of the deficiency, plaintiff filed a claim for the refund of $2,650.11, asserting this amount as overpayment on the theory that a correct assessment could demand no more than the return of the tax benefit originally enjoyed, i. e., $1,877.49. The claim was disallowed.

This court has had prior occasion to consider the question which the present suit presents. In Perry v. United States, 160 F.Supp. 270, 142 Ct.Cl. 7 (1958) (Judges Madden and Laramore dissenting), it was recognized that a return to the donor of a prior charitable contribution gave rise to income to the extent of the deduction previously allowed. The court's point of division—which is likewise the division between the instant parties—was whether the "gain" attributable to the recovery was to be taxed at the rate applicable at the time the deduction was first claimed or whether the proper rate was that in effect at the time of recovery. The majority, concluding that the Government should be entitled to recoup no more than that which it lost, held that the tax liability arising upon the return of a charitable gift should equal the tax benefit experienced at time of donation. Taxpayer urges that the *Perry* rationale dictates that a like result be reached in this case.

---

1. The tax rate in 1939 was 18 percent; in 1940, 24 percent.

The Government, of course, assumes the opposite stance. Mindful of the homage due the principle of stare decisis, it bids us first to consider the criteria under which judicial reexamination of an earlier decision is justifiable. We are referred to Judge Davis' concurring opinion in Mississippi River Fuel Corp. v. United States, 314 F.2d 953, 958, 161 Ct.Cl. 237, 246–247 (1963), wherein he states that:

> \* \* \* The question is not what we would hold if we now took a fresh look but whether we should take that fresh look. A court should not scrutinize its own prior ruling—putting constitutional adjudication, which has its own standards, to one side—merely because, as now constituted, it might have reached a different result at the earlier time. Something more is required before a reexamination is to be undertaken: (a) a strong, even if not yet firm, view that the challenged precedent is probably wrong; (b) an inadequate or incomplete presentation in the prior case; (c) an intervening development in the law, or in critical comment, which unlocks new corridors; (d) unforeseen difficulties in the application or reach of the earlier decision; or (e) inconsistencies in the court's own rulings in the field. Where these or like reasons for reopening are lacking, respect for an existing precedent is counselled by all those many facets of stability-plus-economy which are embodied in the principle of *stare decisis.* \* \* \*

Judged in light of the above-listed criteria, reexamination is claimed to be warranted. In expanding its position on this point, the Government begins by recommending consideration of the views of the *Perry* dissent. Stress is placed upon the point therein noted, namely, that the "balancing" technique adopted by the court in *Perry*—though equitable —was otherwise without legal foundation. The dissent viewed the majority result as going beyond the recognized limits of either statutory or judge-made law. Like expressions of disagreement

have been voiced elsewhere. See Surrey & Warren, Federal Income Taxation 538 (1960); 1 Mertens, Federal Income Taxation § 7.37 (1962); and Rev.Rul. 59–141, 1959–1 Cum.Bull. 17.

As additional ground in support of reconsideration, the Government mentions that *Perry* was decided on a ground which neither of its parties had argued and which we, in later decisions, are said to have abandoned. The Government contrasts the principle of taxation adopted in *Perry* with that reflected in such later decisions as California & Hawaiian Sugar Ref. Corp. v. United States, 311 F.2d 235, 159 Ct.Cl. 561 (1962), and Citizens Fed. Sav. & Loan Ass'n v. United States, 290 F.2d 932, 154 Ct.Cl. 305 (1961). These last cited cases are said to contradict *Perry* because they sanction taxation of "recovered" deductions at the tax rate prevailing in the later year, that is, the year of recovery. The foregoing considerations express sufficient reason to relinquish our deference to precedent in order to examine anew the issue which this case presents.

■■■ A transaction which returns to a taxpayer his own property cannot be considered as giving rise to "income"— at least where that term is confined to its traditional sense of "gain derived from capital, from labor, or from both combined." Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521 (1920). Yet the principle is well engrained in our tax law that the return or recovery of property that was once the subject of an income tax deduction must be treated as income in the year of its recovery. Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946); Estate of Block v. Commissioner, 39 B.T.A. 338 (1939), aff'd sub nom. Union Trust Co. v. Commissioner, 111 F.2d 60 (7th Cir.), cert. denied, 311 U.S. 658, 61 S.Ct. 12, 85 L.Ed. 421 (1940). The only limitation upon that principle is the so-called "tax-benefit rule." This rule permits exclusion of the recovered item from income so long as its initial use as a deduction did not provide a tax

saving. California & Hawaiian Sugar Ref. Corp. v. United States, supra; Central Loan & Inv. Co. v. Commissioner, 39 B.T.A. 981 (1939). But where full tax use of a deduction was made and a tax saving thereby obtained, then the extent of saving is considered immaterial. The recovery is viewed as income to the full extent of the deduction previously allowed.[2]

Formerly the exclusive province of judge-made law, the tax-benefit concept now finds expression both in statute and administrative regulations. Section 111 of the Internal Revenue Code of 1954 accords tax-benefit treatment to the recovery of bad debts, prior taxes, and delinquency amounts.[3] Treasury regulations have "broadened" the rule of exclusion by extending similar treatment to "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years * * *."[4]

Drawing our attention to the broad language of this regulation, the Government insists that the present recovery must find its place within the scope of the regulation and, as such, should be taxed in a manner consistent with the treatment provided for like items of recovery, i. e., that it be taxed at the rate prevailing in the year of recovery. We are compelled to agree.

Set in historical perspective, it is clear that the cited regulation may not be regarded as an unauthorized extension of the otherwise limited congressional approval given to the tax-benefit concept. While the statute (i. e., section 111) addresses itself only to bad debts, prior taxes, and delinquency amounts, it was, as noted in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943), designed not to limit the application of the judicially designed tax-benefit rule, but rather to insure against its demise. "A specific statutory exception was necessary in bad debt cases only because the courts reversed the Tax Court and established as matter of law a 'theoretically proper' rule which dis-

2. The rationale which supports the principle, as well as its limitation, is that the property, having once served to offset taxable income (i. e., as a tax deduction) should be treated, upon its recoupment, as the recovery of that which had been previously deducted. See Plumb, The Tax Benefit Rule Today, 57 Harv.L.Rev. 129, 131 n. 10 (1943).

3. Section 111, Int.Rev.Code of 1954, provides, in part, the following:
"(a) General rule.—Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount.
"(b) Definitions.—For purposes of subsection (a)—
* * * * *
"(4) Recovery exclusion.—The term 'recovery exclusion', with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Secretary or his delegate, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this subtitle * * * reduced by the amount excludable in previous taxable years with respect to such debt, tax, or amount under this section."

4. Treas.Reg. § 1.111–1 (1956), "Recovery of certain items previously deducted or credited," provides:
"(a) General. Section 111 provides that income attributable to the recovery during any taxable year of bad debts, prior taxes, and delinquency amounts shall be excluded from gross income to the extent of the 'recovery exclusion' with respect to such items. The rule of exclusion so prescribed by statute applies equally with respect to all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years, including war losses referred to in section 127 of the Internal Revenue Code of 1939, but not including deductions with respect to depreciation, depletion, amortization, or amortizable bond premiums. The term 'recovery exclusion' as used in this section means an amount equal to the portion of the bad debts, prior taxes, and delinquency amounts (the items specifically referred to in section 111), and of all other items subject to the rule of exclusion which when deducted or credited for a prior taxable year, did not result in a reduction of any tax of the taxpayer under subtitle A * * *."

torted the taxpayer's income [*i. e.*, taxation of a recovery though no benefit may have been obtained through its earlier deduction]." 320 U.S. at 506, 64 S.Ct. at 249.

The *Dobson* decision insured the continued validity of the tax-benefit concept, and the regulation—being but the embodiment of that principle—is clearly adequate to embrace a recovered charitable contribution. See California & Hawaiian Sugar Ref. Corp., supra, 311 F.2d at 239, 159 Ct.Cl. at 567. But the regulation does not specify which tax rate is to be applied to the recouped deduction, and this consideration brings us to the matter here in issue.

Ever since Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931), the concept of accounting for items of income and expense on an annual basis has been accepted as the basic principle upon which our tax laws are structured. "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." 282 U.S. at 365, 51 S.Ct. at 152. To insure the vitality of the single-year concept, it is essential not only that annual income be ascertained without reference to losses experienced in an earlier accounting period, but also that income be taxed without reference to earlier tax rates. And absent specific statutory authority sanctioning a departure from this principle, it may only be said of *Perry* that it achieved a result which was more equitably just than legally correct.[5]

 Since taxpayer in this case did obtain full tax benefit from its earlier deductions, those deductions were properly classified as income upon recoupment and must be taxed as such. This can mean nothing less than the application of that tax rate which is in effect during the year in which the recovered item is recognized as a factor of income. We therefore sustain the Government's position and grant its motion for summary judgment. Perry v. United States, supra, is hereby overruled, and plaintiff's petition is dismissed.

---

5. This opinion represents the views of the majority and complies with existing law and decisions. However, in the writer's personal opinion, it produces a harsh and inequitable result. Perhaps, it exemplifies a situation "where the letter of the law killeth; the spirit giveth life." The tax-benefit concept is an equitable doctrine which should be carried to an equitable conclusion. Since it is the declared public policy to encourage contributions to charitable and educational organizations, a donor, whose gift to such organizations is returned, should not be required to refund to the Government a greater amount than the tax benefit received when the deduction was made for the gift. Such a rule would avoid a penalty to the taxpayer and an unjust enrichment to the Government. However, the court cannot legislate and any change in the existing law rests within the wisdom and discretion of the Congress.