**TWITCHCO, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3507–N.**

United States District Court,
M. D. Alabama, N. D.

Aug. 14, 1972.

Alto V. Lee, III, Lee & McInish, Dothan, Ala., Bert W. Hunt, Archer, Greiner & Read, Camden, N. J., and Ronald F. Kidd, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., M. D. Ala., Montgomery, Ala., and John F. Murray and Lynn W. Ross, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

Twitchco, Inc., a corporation, taxpayer in this case, seeks a refund of its income tax for the fiscal year ending May 31, 1967. The case is submitted upon the pleadings, motions, stipulated facts, and the briefs of the parties. Jurisdiction is based upon 28 U.S.C. § 1346(a)(1). As authorized by Rule 52 (a), Federal Rules of Civil Procedure, the appropriate findings of fact and conclusions of law will be incorporated in this memorandum opinion.

## THE FACTS

On February 28, 1967, Twitchco, Inc., sold the assets of its textile and paper products business to Borg-Warner, Inc., which also assumed the liabilities of the business. Twitchco reported a gain of $348,956.30 on the sale of its assets on its federal income tax return for the fiscal year ending May 31, 1967. At the time of the sale, Twitchco occupied three buildings which it allegedly leased from the City of Dothan, Alabama. Borg-Warner also assumed these alleged leases, including the options to renew and to purchase which were part of the lease agreements. Under these lease agreements, the city had agreed to buy real property and to construct buildings. To finance the construction costs, the city issued bonds which were secured by a pledge and assignment of the city's interest in the lease agreements, including revenues derived by the city from leasing. The bonds were additionally secured by a deed of trust on the properties. The pertinent facts concerning each lease are as follows:

Lease One: 1. Signed June 1, 1956.
2. Monthly rental payment—$3,950.
3. Lease term—15 years.
4. Option to renew for 15 years.
5. Option to purchase for $5,000 at end of lease period within six months.
6. Amount of bonds issued by the City of Dothan—$440,000. Plaintiff was not involved in these bonds as a bondholder.

Lease Two: 1. Entered into July 1, 1961.
2. Monthly rental payment—$1,214.69.
3. Lease term—15 years.
4. Option to renew for 15 years.
5. Option to purchase for $1,250 at end of lease period within six months.
6. Amount of bonds issued by the City of Dothan—$110,000. Plaintiff was not involved in these bonds as a bondholder.

Lease Three: 1. Entered into August 1, 1966.
2. Monthly rental payment—$1,505.16.
3. Lease term—15 years.
4. Option to purchase for $2,000 at end of lease period within six months.
5. Amount of bonds issued by the City of Dothan—$175,000. Plaintiff was not involved in these bonds as a bondholder.

In the fiscal year ending May 31, 1957, and in subsequent years, Twitchco deducted from its income in each year rental payments on one or more of these leases. For fiscal years 1957 through 1965, the Internal Revenue Service (IRS), on audit of plaintiff's income tax returns, approved the deduction of rental payments on these leases. In 1969, however, on audit and review of the plaintiff's tax return for fiscal years 1966 and 1967, the District Director, and later

the Appellate Division of the IRS determined that the agreements between the plaintiff and the City of Dothan were not rental agreements but were in substance financing arrangements to pay the construction costs of the buildings occupied by the plaintiff. Plaintiff therefore was treated as the real owner of the buildings. The IRS disallowed the rental deduction ($57,018.67) taken by the plaintiff for 1967, and instead allowed deductions for interest paid on the bonds ($16,913.03) and depreciation on the buildings ($12,163.30).[1] In addition, the Service included the buildings as assets in the computation of the amount of gain realized by the plaintiff on the sale of its assets to Borg-Warner. Plaintiff initially protested the IRS's determination but for the purposes of this suit has adopted the position that it did, in fact, own the buildings.

The revenue agent proposed to adjust the amount of gain reported by Twitchco by increasing the amount realized by a sum equal to the liabilities assumed by Borg-Warner in connection with the three Dothan buildings ($341,419.16) and subtracting from this an amount equal to the adjusted basis of the buildings ($404,578.70). The effect of this was to reduce the amount of gain by $63,159.54. This adjustment, together with the others mentioned above, resulted in a proposed $15,411.26 tax refund for fiscal year 1967. Subsequently, Twitchco filed a timely claim for refund in which it proposed an adjustment in capital gains which differed from that of the revenue agent. Under its calculation, Twitchco would increase the amount realized by $388,004.63 and add to the basis of its assets an adjusted basis for the buildings equal to $560,512.50 for a net reduction in gain of $172,507.87. Twitchco claimed a tax refund of $43,126.93. When more than six months had elapsed without its claim being allowed, plaintiff filed this suit.

In the stipulated facts and in its brief, the government does not contend that the revenue agent's proposals to adjust capital gains are correct. In fact, it has adopted a position as to the proper method of computing gain realized which is substantially equivalent to the method used by the plaintiff. The parties' positions differ materially with respect to only two items. It is the government's position, however, that since the plaintiff received the benefit of the rental deductions in prior years, the plaintiff, in 1967, must take into ordinary income the amount by which deductions for rent on the buildings during years prior to 1966 exceeded the depreciation allowable on the buildings in those years ($131,725), to the extent that the rental payments were attributable to the payment of bond principal ($306,000). In the alternative, the government contends that the doctrine of equitable recoupment allows it to recoup against any refund which might otherwise be due the plaintiff for 1967, the amount of taxes which plaintiff avoided by receiving rental deductions on the buildings in years prior to 1966 in excess of the amount of depreciation allowable on the buildings in those years.

## PRELIMINARY QUESTIONS

■■ At the outset, two arguments, one by the taxpayer and one by the government, both of which lack any real substance, may be eliminated. Twitchco argues that the government is estopped from changing the position taken by the revenue agent and supported by the Appellate Division of the Internal Revenue Service. It is a well-settled principle of law that the doctrine of equitable estoppel is not a bar to the correction by the commissioner of a mistake of law. *See, e. g.,* Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957). *See also* this Court's opinion in First National Bank of Montgomery v.

---

1. Similar adjustments were made for fiscal year 1966. These, together with other adjustments not related to the buildings,

resulted in no change in tax liability for that year. Years prior to 1966 were barred by the statute of limitations.

**334**

United States, 176 F.Supp. 768, aff'd 285 F.2d 123 (5th Cir. 1959); Bintliff v. United States, 462 F.2d 403 (5th Cir. 1972).

■ The government argues that plaintiff is now precluded from raising the question whether accrued interest payments on the bonds in any amount existed at the time of the sale to Borg-Warner, since it failed to raise the issue in its claim for a refund. First of all, the plaintiff does not argue that accrued interest on the bonds did not exist at the time of the sale. Clearly it did, since interest was payable only twice a year. Rather, plaintiff argues that the accrued interest on the bonds should not be included in the amount realized on the sale of the buildings. With this in mind, it is quite clear that plaintiff raised the issue in its initial claim. Treasury Regulation § 301.6402–2 requires that a claim set forth "in detail each ground upon which a credit or refund is claimed, in facts sufficient to apprise the commissioner of the exact basis thereof." Plaintiff in its claim presented a detailed statement setting forth the calculation of the amount realized from the sale of the Dothan buildings. No accrued interest payments were included. Such a presentation of the issue is sufficient to satisfy the requirements of the applicable regulation.

### THE TAX BENEFIT RULE

The government argues that under the tax benefit rule, the amount by which rental deductions in years prior to 1966, to the extent attributable to payment of bond principal, exceeds depreciation allowable, is includable in income in 1967. It is clear that no new assessment can now be made for income received in 1967, since the bar of the statute of limitations has fallen. See 26 U.S.C. § 6501. By its argument, then, the government apparently wishes to set up the defense of lack of overpayment. Under this defense, traceable to the landmark decision by the Supreme Court in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), the government may offset against the claim for refund of income taxes for 1967 other income tax for 1967 which plaintiff failed to report and pay. See, e. g., Dysart v. United States, 340 F.2d 624, 628, 169 Ct.Cl. 276 (1965). The theory of setoff is based upon the assumption that a taxpayer is not entitled to a refund unless he has overpaid his tax. Thus, when a taxpayer applies for a refund, his entire tax liability under the particular tax return is open for redetermination. Lewis v. Reynolds, 284 U.S. at 283, 52 S.Ct. 145. Any setoff claimed by the government, however, is cognizable only to the extent of reducing the taxpayer's claim to zero. Dysart v. United States, 340 F.2d at 626. If, under the tax benefit rule, Twitchco should have reported income in 1967 which it did not report, the government would be entitled to a setoff against plaintiff's present refund claim.

■ The tax benefit rule requires that if an amount is deducted from gross income in one taxable year and provides a tax benefit to the taxpayer in that year, and the amount is recovered in a later year, the recovery must be included in income in the later year. See, e. g., West Seattle National Bank of Seattle v. C.I.R., 288 F.2d 47, 48 (9th Cir. 1961); Alice Phelan Sullivan Corp. v. United States, 381 F.2d 399, 402, 180 Ct.Cl. 659 (1967). See generally Plumb, The Tax Benefit Rule Today, 57 Harv.L.Rev. 129 (1943). The rationale underlying the rule is that "property, having once served to offset taxable income (i. e., as a tax deduction) should be treated, upon its recoupment, as the recovery of that which had previously been deducted." Alice Phelan Sullivan Corp. v. United States, 381 F.2d at 402 n. 2. Statutory recognition of this rule is found in Section 111 of the 1954 Internal Revenue Code which provides for the exclusion from gross income of income attributable to the recovery of certain items (bad debts, prior taxes, and delinquency amounts) which were deducted in an earlier year but which provided no tax benefit when deducted. The general rule relating to tax benefits is not limited by the provi-

sions of Section 111. The application of the comparable provisions of the 1939 Code (Section 22(b)(12)) was extended by court decision (see Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943)) and later by administrative interpretation to the recovery, with certain exceptions not pertinent here, of "all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years." See Treas.Reg. § 1.111–1(a); Reg. 118, Sec. 38.22(b)(12)–1. Thus the tax benefit rule has been applied to the recovery of previously deducted expenses. See Commissioner of Internal Revenue v. Anders, 414 F.2d 1283 (10th Cir.), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). See also Spitalny v. United States, 430 F.2d 195 (9th Cir. 1970).

■ The government argues in this case that the sale of the three buildings in question constitutes a "recovery" of the rental expenses which were deducted in prior years to the benefit of the plaintiff. While the cases cited above appear to support this contention, this Court need not reach the question. The Tax Court has held, and no case has been found to the contrary, that the tax benefit rule applies only when the initial deduction was proper. It does not allow the Commissioner to increase a taxpayer's income by the amount of a deduction taken *improperly* in a year now closed by the statute of limitations, provided the Commissioner was not misled by false representations made by the taxpayer, into a belief that the deduction was proper. Mayfair Minerals, Inc., 56 T.C. 82 (1971), aff'd per curiam 456 F.2d 622 (5th Cir., March 7, 1972). Adolph B. Canelo III, 53 T.C. 217, 226 (1969), aff'd on other grounds, 447 F.2d 484 (9th Cir. 1971); Streckfus Steamers, Inc., 19 T.C. 1, 8 (1952). See also Commissioner of Internal Revenue v. Schuyler, 196 F.2d 85 (2d Cir. 952). Cf. Lloyd H. Faidley, 8 T.C. 1170 (1947).

■ In this case the Internal Revenue Service has determined, and Twitchco concedes, that the agreements between Twitchco and the City of Dothan constituted sales of the property to Twitchco. Deductions for rental payments therefore were improper and could have been disallowed within the time set by the statute of limitations. A statute of limitations is based on the theory that "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). The application of the tax benefit rule by the federal courts has not violated this principle. The government, however, would have this Court apply the tax benefit rule to allow recovery for claims which arose, in the case of the first building purchased, more than ten years prior to the year here at issue. In making this contention, the government emphasizes that if the tax benefit rule is not applied, a double tax benefit will be conferred on Twitchco. This argument lacks force. As the Supreme Court has noted: "As statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them." Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 302, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946). Were courts to attempt to adjust the equities in individual cases, the salutary effect of the statute would be seriously undermined. Id. at 301–302, 67 S.Ct. 271. Since the tax benefit rule could not properly have been applied by the government to Twitchco to include the "recovered" rental payments in plaintiff's 1967 income, it cannot now support the government's claim for a setoff.

### DOCTRINE OF EQUITABLE RECOUPMENT

■ In the alternative the government contends that under the doctrine of equitable recoupment, the plaintiff is not entitled to a refund. Equitable recoup-

ment, available to both the taxpayer and the government depending on the circumstances, is in the nature of a defense arising from the same transaction as plaintiff's claim. An application of the doctrine will under certain circumstances permit the government to recoup a correct tax, which could not ordinarily be collected because barred by the statute of limitations, against a tax erroneously collected.[2] Recoupment operates only to reduce a taxpayer's claim for a refund; it does not allow the collection of the barred tax itself. *See generally* 10 Mertens, Law of Federal Income Taxation, § 58.42, at 142–158; § 60.05, at 17–26 (rev. ed. 1970).

The doctrine was first applied by the Supreme Court in the tax law in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In *Bull*, the Supreme Court allowed recoupment in favor of the taxpayer who erroneously included in an estate, and paid an estate tax on, certain profits received by an estate from a partnership for one year following the death of the testator. From an assessment by the commissioner of an income tax on the same profits the executor appealed to the Board of Tax Appeals, which appeal was dismissed. Since it was then too late to file a claim for refund of the estate taxes, the executor sued to recoup the barred overpayment of estate taxes against the recently paid income tax. Recoupment was granted on the ground that both taxes arose out of the same transaction. In Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), after the statute of limitations had run against the collection of the tax from the beneficiary, the trustees sued to recover the tax paid by them on income received by the trust. The Court held they could not recover, since the government could recoup against the tax paid, the tax which the beneficiary should have paid.[3]

Later that year, in McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937), the Court indicated that the doctrine of recoupment in tax cases was to be shortlived, ruling that the government was barred from resorting to recoupment by virtue of Sections 607 and 609(a) of the Revenue Act of 1928. However, in 1946, the Supreme Court considered the issue again in Rothensies v. Electric Storage Battery Co., *supra*. Although the Court there denied recoupment to the taxpayer, it did not do so on the basis of the statutory provisions comparable to those applied in *McEachern*. It denied recoupment on the failure to show a single transaction as required by *Bull*, *supra*, and *Stone*, *supra*. It seems reasonable to conclude, therefore, that while recoupment may be granted by the courts (*see, e. g.*, Boyle v. United States, 355 F.2d 233 (3rd Cir. 1965); United States v. Herring, 240 F.2d 225 (4th Cir. 1957), the existing state of the law requires that the single transaction test be used to narrowly confine the doctrine. *See, e. g.*, Ford v. United States, 276 F.2d 17, 149 Ct.Cl. 558 (1960); Kojes v. United States, 241 F.Supp. 762 (E.D. N.Y.1965); Note, Equitable Recoupment in Tax Law, 42 N.Y.U.L.Rev. 537, 548 (1967). In *Rothensies*, the taxpayer erroneously paid excise taxes from 1919 to 1926. In 1926 the company filed a refund claim for the years 1922 through 1926, years not barred by the statute of

---

2. Sections 1311–1315 of the Internal Revenue Code of 1954 provide a similar, and exclusive, remedy under specified circumstances. *See* Gooding v. United States, 326 F.2d 988, 994–996, 164 Ct.Cl. 197, cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42 (1964).

3. In *Stone* the Court considered for the first time the argument that Sections 607 and 609 of the 1928 Code (now Internal Revenue Code of 1954, Sections 6401(a), 6514) precluded recovery in such a situation. The Court found the sections inapplicable since the "demand made upon the trustee was not barred by limitation and it would be an unreasonable construction of the statute, . . . to hold that it is intended to deprive the government of defenses based on special equities establishing its right to withhold a refund from the demanding taxpayer." 301 U.S. at 538, 57 S.Ct. at 854.

limitations. This claim was settled, and in 1935 the taxpayer received a refund of excise taxes. When the government assessed and collected an income tax on this refund, taxpayer asserted a right to recoup the erroneous payment of excise taxes for the years 1919 through 1921. In granting recoupment, the Third Circuit concluded that the single transaction requirement was met since there was a "logical connection between the main claim and recoupment claim." 152 F.2d 521, 524 (1945). The Supreme Court reversed, concluding that there was no single transaction or taxable event. In reviewing the facts of *Bull, supra,* and *Stone, supra,* the Court observed that in those cases "[t]he single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due." 329 U.S. at 300, 67 S.Ct. at 272. Noting that the Third Circuit's refusal to narrowly construe the requirement that both claims originate in the same transaction "misapprehends the limitations on the doctrine of recoupment . . .," the Court declined to extend the doctrine beyond the facts of *Bull* and *Stone. Id.* at 301, 67 S.Ct. at 273.

 In *Twitchco,* the case now before this Court, the government's claim for recoupment arises out of the purchase of the three Dothan buildings which made possible the erroneous deductions and consequent reduction in income taxes. Twitchco's claim for refund arises from the sale of the buildings. A purchase is not the same transaction as a sale. See Wood v. United States, 213 F.2d 660 (2d Cir. 1954). In *Wood,* as in *Twitchco,* because of a mistake by the government, the taxpayer was able to take advantage of a deduction in one year and in a subsequent year include the same deduction in the basis of an asset, with the result that the taxpayer obtained a double benefit. The Second Circuit in *Wood,* however, was unwilling to permit the government to use recoupment to go behind the bar of the statute of limitations to make the

correction, even though this prevented the government from collecting money which in equity it may have been entitled to.

There appears to be no justification for allowing the government to recoup in the case now before this Court. The government's argument seems almost precisely the same argument followed by the Third Circuit in *Rothensies* and rejected by the Supreme Court. With a realization that the limitation of the recoupment rule to the "single transaction or taxable event" test will in some instances bring about inequitable results, recoupment in the case now before this Court must be denied in favor of the statute of limitations which itself is primarily an instrument of fairness. The smooth and fair operation of the income tax policy requires that the statute not be undermined.

 In calculating the refund due, contrary to plaintiff's argument, the parties shall not decrease the amount realized on the sale of Twitchco's assets to Borg-Warner by the sum of $19,647.-11, which represents the value of a tax refund claim included among the assets sold but later disallowed by the IRS. Twitchco guaranteed the payment of this sum to Borg-Warner as an asset, and the subsequent disallowance of the claim in no way affects the amount of gain attributable to the sale. See 26 U.S.C. § 1001. Nor shall the parties include in the amount realized the sum of $2,969.16 which the government labels accrued interest liabilities assumed by the buyer. In calculating the amount of the liabilities assumed by Borg-Warner, both the plaintiff and the government have hypothesized that Twitchco, the real owner of the buildings, financed the construction by borrowing the sums which were required ($400,000.00; $110,000.00; and $175,000.00) from a lending institution at 5%, repayable in 15 years, the notes payable, according to a standard mortgage amortization schedule, in equal monthly installments of principal and interest. It would be inconsistent with this view

338

of the transaction to include accrued interest as a liability, since interest on this type loan is not accrued, but is paid monthly on the first of the month.