**HUGHES PROPERTIES, INC.**

v.

**The UNITED STATES.**

No. 594–82T.

United States Claims Court.

June 29, 1984.

Denton N. Thomas, Houston, Tex., for plaintiff; O. Clayton Lilienstern, of counsel.

David C. Hickman, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

SETO, Judge:

This case is before the court on cross-motions for summary judgment with all relevant facts stipulated. The single issue before the court is whether certain liabilities, assertedly giving rise to the claimed deductions, have been fixed for the purpose of calculating federal income tax. For the reasons set forth below, the court concludes that plaintiff's motion should be granted and defendant's motion should be denied.

## FACTS

Plaintiff, Hughes Properties, Inc., is a Nevada corporation which owns Harolds Club, a gambling casino located in Reno, Nevada. During the fiscal years ending on June 30 in 1973, 1974, 1975 and 1977, plaintiff owned and operated progressive slot machines in this gambling casino. A "progressive slot machine," like other, nonprogressive, slot machines, pays fixed jackpot amounts when specific combinations of symbols appear. Unlike other slot ma-

chines, however, a progressive slot machine also has an additional, "guaranteed," jackpot. This latter jackpot amount is initially set at a given minimum. The machine automatically increases, by a pre-set ratio, the amount of this jackpot as money is gambled on the machine, and displays that amount on a meter on the face of the machine. The amount will increase until the jackpot is won or until a maximum amount (predetermined by the casino) is reached. A "guaranteed" jackpot can be won only when (1) the customer gambles the required (and, usually, the maximum) amount of money *and* (2) the machine displays the correct combination of symbols.

During the taxable years in issue, plaintiff operated various types of progressive slot machines. These machines differ as to the number and value of coins that can be gambled by a customer and the number and size of the reels contained within a machine. In addition, some machines have two "guaranteed" jackpots, which alternate in availability with each pull of the handle. Because of the differences in types of machines, the odds of winning a jackpot vary. According to plaintiff's brief and pretrial submission, the average period between payoffs is approximately 4.5 months.[1]

In September 1972, the Nevada Gaming Commission promulgated Regulation § 5.110[2], which, for the first time, regu-

---

1. "This determination was made as of September 1, 1976, for the twenty-four 4-reel progressive slot machines then in operation. All but two of these machines were installed prior to 1974. With the exception of two machines, one of which had been in operation for thirteen months and the other for thirty-five months, *that did not pay off* prior to September 1, 1976, the payoff frequency ranged from a high of 14.3 months to a low of 1.9 months." Plaintiff's brief at 4 (emphasis supplied). *See also* Transcript of Oral Arguments, February 16, 1984, at 36.

2. This regulation reads as follows:

Progressive Slot Machines
(As adopted September 1972)

1. This paragraph shall apply to any slot machine with a payoff indicator which has a payoff that increases as the machine is played.

2. No payoff indicator shall be turned back to a lesser amount, unless the amount by which the indicator has been turned back is actually paid to a winning player, or unless the change in the indicator reading is necessitated through a machine malfunction, in which case an explanation must be entered on the daily report as required in subsection 5.

3. If the payoff indicator progresses without a payoff until the indicators return to zero, some means must be utilized to add another digit, unless a dollar limit has been posted on the machine clearly visible to the player, and which was posted before any payoff was registered on the indicator. When the limit has been reached it must be permitted to remain until won by a player.

4. Once a payoff amount appears on an indicator, the rate of progression may not be changed until there has been a winner, and the indicator is returned to zero.

lates the use of progressive slot machines maintained by licensed casinos. This regulation directs licensed gaming establishments to compile and maintain daily records indicating the "guaranteed" jackpot amounts registered on each machine. The regulation further states that the displayed jackpot amounts cannot be reduced unless the jackpot is either won by a customer, or the slot machine is taken off the casino floor for repairs. In the latter case, a report explaining the reasons for the removal must be filed. *See* Nevada Gaming Regulation § 5.110(2) (as adopted September 1972).[3]

Regulation § 5.110 is strictly enforced by the Nevada Gaming Commission (hereinafter "Commission"). *See* Affidavit of John H. Stratton, former member of Nevada Gaming Control Board, p. 2 at ¶ 4. The Commission is authorized by § 463.310 of the Nevada Revised Statutes to impose severe administrative sanctions (including license revocation) upon any casino that wrongfully refuses to pay a winning customer a "guaranteed" jackpot. Hence, once accumulated, a "guaranteed" jackpot cannot be lessened or eliminated except by a payoff.

In accordance with Regulation § 5.110(2), plaintiff recorded the meter readings on its progressive slot machines and did not decrease any of the progressive jackpot amounts except as allowed by the regulation. These meter readings provided the numerical data for the deductions taken by plaintiff and placed at issue here. The accrued but unpaid progressive slot machine jackpot amounts as reported by the plaintiff from 1973 to 1977 were [4]:

| Fiscal Year Ended June 30 | Accrued Liability | Expense (Income) |
|---|---|---|
| 1973 | $360,228.55 | $360,228.55 |
| 1974 | 563,983.99 | 203,755.44 |
| 1975 | 853,584.22 | 289,600.23 |
| 1976 | 839,400.97 | (14,183.25) |
| 1977 | 888,820.67 | 49,419.70 |

Plaintiff deducted as an ordinary and necessary business expense the *net* accrued liability for each fiscal year. The net accrued liability is determined by subtracting the previous year's accrued liability, which has already been deducted, from the current gross liability as indicated by the meter totals. For example, on midnight of the last day of fiscal year 1974, plaintiff's accountants totaled the figures appearing on the meters of the progressive slot machines and determined that their gross liability for that fiscal year was $563,983.99. Since plaintiff had already deducted $360,228.55 as a business expense in the previous fiscal year, the net accrued liability was $203,755.44. This is the amount that plaintiff reported as a deduction on its income tax returns for fiscal year 1974.

Although there is no dispute as to the *accuracy* of the amounts deducted by

---

5. Records shall be maintained which record the amount of the indicated payoff at least once per day. Supporting documents shall be maintained to explain any reduction in the payoff amount from the previous entry. Such records and documents shall be retained for a period of three years....

**3.** The regulation as set forth in note 2 *supra*, was amended on March 1, 1977. The amended regulation states in part that:

4. No payoff indicator shall be turned back to a lesser amount unless one of the following circumstances occur:

(a) The amount shown on the progressive meter is paid to a player as a jackpot; or

(b) It becomes necessary to adjust the progressive meter to prevent the jackpot indicator from displaying an amount greater than the limit imposed by the licensee pursuant to paragraph 2 of this regulation; or

(c) It becomes necessary to change the jackpot indicator because of machine malfunction, in which case an explanation must be entered on the daily report as required by ... this regulation.

5. *Payoff required.* Once a payoff amount appears on a jackpot indicator, the progressive meter may not be decreased except as allowed by this regulation. A progressive jackpot may be transferred to another progressive machine at the same location in the event of machine malfunction, replacement, or for other good reason. When the maximum jackpot limit is reached, it must be permitted to remain until won by a player. (Emphasis supplied.)

The amendments to this regulation did not change the force or scope of this law and therefore do not affect this court's ruling.

**4.** Plaintiff's brief at 6.

plaintiff[5], the Internal Revenue Service ("IRS") denied plaintiff's deductions, claiming that the jackpot payoffs can only be deducted in the year actually paid because the jackpot amounts were merely a contingent liability. Defendant contends that these amounts are only deductible when actually won by a customer. Plaintiff sought a refund from the IRS after paying the assessed taxes and asserted that the accrued expense deductions were timely because the liability is fixed by Nevada state law. After plaintiff's request for a refund was denied, this suit was instituted.

## DISCUSSION

Business expenses are deductible under the Internal Revenue Code, Title 26 of the United States Code (hereinafter "the Code" or "IRC"):

> In general—there shall be allowed as a deduction all the *ordinary and necessary* expenses paid or incurred during the taxable year in carrying on any trade or business.... [IRC § 162(a) (Emphasis supplied).]

Defendant does not contest the deductibility *per se* of plaintiff's liability for the "guaranteed" jackpot amounts, but rather takes issue with the timing of those deductions. The timing of a deduction is determined with reference to IRC § 461(a), which states the general rule: "The amount of any deduction ... shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." Plaintiff computes its income by the accrual method of accounting, as allowed by subsections (a) and (c)(2) of § 446 of the Code. The pivotal question thus becomes whether plaintiff, in accruing the unpaid, "guaranteed" jackpots as liabilities, properly utilized the accrual method of accounting.

Treasury Regulation § 1.461–1(a)(2) explains the general rule for the timing of deductions by adopting a test first formulated by the Supreme Court in *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). This test, now known as the "all events" test, is stated as follows:

> [U]nder an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of liability and the amount thereof can be determined with reasonable accuracy.

■ The Court of Claims has accepted this test, restating it as follows:

> First, the taxpayer must show that the *fact of liability* is certain as of the end of the [fiscal] year in question. Second, the taxpayer must demonstrate that the amount of the liability can be reasonably ascertained. [*Eastman Kodak Company v. United States,* 209 Ct.Cl. 365, 375, 534 F.2d 252, 258 (1976) (Emphasis in original).]

When these two criteria are satisfied, the deduction must be allowed even though actual payment is deferred to a different fiscal year. *Clark v. Woodward Construction,* 179 F.2d 176 (10th Cir.1950). *See also Dixie Pine Products Co. v. Commissioner,* 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270 (1944). To deny a deduction that has satisfied the test would be contrary to the intent of the regulation as well as to the fundamental accounting principle that accrual accounts immediately reflect expenses incurred without regard to the timing of actual payment.

■ In this action, defendant's counsel, during oral argument, stated that the accuracy of the amounts deducted by plaintiff is not in issue.[6] Defendant asserts, however, that the first prong of the "all events" test has not been satisfied. It specifically rejects plaintiff's argument that the jackpot liability was fixed, despite admitting that plaintiff is precluded from avoiding payment as a result of Nevada Gaming Commission Regulation § 5.110. To support its theory, defendant cites

---

**5.** Transcript of Oral Arguments at 3–4.

**6.** Transcript of Oral Argument at 3–4 ("There is no dispute in this case as to the reasonable accuracy of the amounts.")

*Nightingale v. United States,* 684 F.2d 611 (9th Cir.1982), a case also involving a Nevada casino seeking to deduct accrued progressive slot machine jackpot amounts based upon the theory that the liability was fixed by state law. In *Nightingale,* the Ninth Circuit denied the deduction for accrued but unpaid jackpot expenses because it found that the "all events" test had not been satisfied. The court held that:

> The one indispensable ... event is the winning of the progressive jackpot by some fortunate gambler. * * * Gambling being what it is, and gambling odds being what they are, it is entirely possible that no actual liability will ever occur. * * * [T]here is no way of knowing when any particular 'one armed bandit' will pay off, nor what the amount of that payoff will then be. [684 F.2d at 614.]

The *Nightingale* court reasoned that without the "one indispensable ... event," the liability for accumulated but unpaid jackpot amounts was contingent and therefore did not satisfy the first prong of the "all events" test.

The essential argument, therefore, concerns the last event necessary to satisfy the "all events" test. Defendant contends that this last event is the actual, winning handle pull. Plaintiff contends that the last event is the last play (successful or not) of the machine before the close of the fiscal year, that is, the last change in the jackpot amount before the amount is recorded for accounting purposes. We believe that the latter view is correct. In *Clark, supra,* the court stated: "The decisive factor is the creation of an enforceable liability." 179 F.2d at 177. In *Trinity Construction Co. v. United States,* 424 F.2d 302, 305 (5th Cir.1970), it was held that: "Accrual of a deduction is permitted only in the taxable year when the obligation to pay it is unconditionally fixed," (*citing Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934); *Security Flour Mills Co. v. Commissioner of Internal Revenue,* 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed.2d 725 (1944); and *Whitaker's Estate v. Commissioner of Internal Revenue,* 259

F.2d 379 (5th Cir.1958)). At the end of plaintiff's fiscal year, plaintiff's obligation to pay out the recorded amount is "unconditionally fixed" by the terms of § 5.110. Under that regulation, the liability for the jackpot amount can be enforced by the Nevada Gaming Commission. The winning handle pull, on the other hand, only determines the "fortunate gambler" in whose favor the liability is enforced. That the identity of that "fortunate gambler" is unknown, that the exact time the jackpot will be won is unknown, or that the exact amount of the jackpot at the time it is won is unknown does not affect the certainty of the liability at the end of plaintiff's fiscal year; in other words, "when the liability itself is clearly fixed ... other uncertainties do not necessarily destroy that initial certainty." *Washington Post Co. v. United States,* 405 F.2d 1279, 186 Ct.Cl. 528, 536 (1969). In the fact setting before the court, the uncertainties listed above do not destroy the "initial certainty" of liability. Even if the progressive slot machines were to never pay off, the set jackpot amounts indicated on the face of the machine would still continue to be an *incurred* liability fixed by state law, for which plaintiff would continue to be responsible. Plaintiff's deductions for the net accrued liability are proper.

We further observe that, were the actual winning handle pull held to be the last event necessary to satisfy the "all events" test, the effect of such a holding would be to convert plaintiff, at least in this instance, from an *accrual* basis taxpayer to a *cash* basis taxpayer. In the absence of the gaming commission's regulation, this might be a necessary step in order to ensure that plaintiff's method of accounting accurately reflected its financial status, inasmuch as plaintiff's liability for jackpots could not be known until a jackpot had been won. Because the regulation makes the jackpot amounts enforceable liabilities, however, plaintiff should be allowed to use a method of accounting that clearly reflects the existence of those liabilities for the period during which the liabilities were incurred. The court is satisfied that plain-

tiff's deductions of *net* accrued liabilities accomplishes this goal.

Were this the whole import of the *Nightingale* decision, this court, having respectfully declined to follow that decision, would have no need to continue. The *Nightingale* court, however, listed three other factors in support of its decision which we, again respectfully, reject. First, the *Nightingale* court stated that "[i]f the [casino] ... were to close its doors and go out of business, ... it would not owe the jackpots to anybody. This tends to show that there is no present liability." 684 F.2d at 615. This is a misstatement of the consequences. If the casino were to be relieved of the responsibility of paying off the slot machine jackpots which have already been deducted, the amounts displayed on the meters would constitute income. *See* IRC § 61(a); *Alice Phelan Sullivan Corporation v. United States*, 381 F.2d 399, 180 Ct.Cl. 659 (1967) (return or recovery of property that was once subject to a deduction must be treated as income in the year of its recovery). *See also Putoma Corp. v. Commissioner*, 601 F.2d 734, 741 (5th Cir. 1979).

The *Nightingale* court also appeared to be concerned that a Pandora's box would be opened if the deductions sought in that case were allowed. The concern was that accrual basis casinos would be able to avoid paying taxes simply by placing additional progressive slot machines set with very high initial jackpot amounts on their casino floors on the very last day of the fiscal year. This concern is obviated by the provisions of § 446(b) of the Code: "[I]f the method used [to compute taxable income] does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." The Court of Claims has upheld, in no uncertain terms, the Commissioner's powers under this section:

> [Defendant] is no doubt correct in its position that the Commissioner has broad discretion to modify a taxpayer's accounting method to insure a clear reflec-

tion of income. *See Commissioner v. Hansen*, 360 U.S. 446, 467 [79 S.Ct. 1270, 1281, 3 L.Ed.2d 1360] (1959); *Lucas v. American Code Co.*, 280 U.S. 445, 449 [50 S.Ct. 202, 203, 74 L.Ed. 538] (1930). Even where the taxpayer's accounting method complies with generally accepted principles, the Commissioner may reject it if he determines that it does not clearly reflect the taxpayer's income. *American Automobile Assoc. v. United States*, 367 U.S. 687, 692, 695 [81 S.Ct. 1727, 1729, 1731, 6 L.Ed.2d 1109] (1961). And in challenging the Commissioner's determination, the taxpayer has a heavy burden of proof to show a clear abuse of discretion. *Fort Howard Paper Co. v. Commissioner*, 49 T.C. 275, 284 (1967). [*Clement, et al. v. United States* [580 F.2d 422] 217 Ct.Cl. 495, 509–510 (1978) *(per curiam), cert. denied*, 440 U.S. 907 [99 S.Ct. 1214, 59 L.Ed.2d 455] (1979).]

The court also held that the Commissioner may modify not only the taxpayer's method, but also any particular item therein that distorts income: "It is settled that the Commissioner has discretionary authority to disallow a particular deduction on the ground that the timing of the payment distorts income." *Id.* at 510, 580 F.2d 422, *citing Burck v. Commissioner*, 533 F.2d 768, 773 (2d Cir.1976) and *Sandor v. Commissioner*, 62 T.C. 469, 476–477 (1974), *aff'd*, 536 F.2d 874 (9th Cir.1976). As evidenced by the decision in *Clement, supra*, this court will not hesitate to uphold the Commissioner's efforts to eradicate fraudulent practices, but, where no such practice has been alleged or proven and where the court has found that the timing of the deduction does not distort income, the court will not act on mere speculation.

One last issue that the *Nightingale* court addressed was its concern that the casino was deducting an expense that was not being matched in the current taxable year with the income of a winning customer. "To allow a deduction for an accrued expense would be to allow a deduction where there will be no corresponding income for perhaps four years or longer. Until then (the actual winning of the jackpot) there

can be no accrual [sic] of income...."[7] 684 F.2d at 615. The court's use of the word "accrual" is unclear here—moreover, it is *not* required that there be any matching of income and expense between two different taxpayers. The Court of Claims has declared that in a transaction between an accrual basis taxpayer and a cash basis taxpayer, the former is obligated to recognize expenses when the "all events" test is met, while the latter must only report income actually or constructively received. *Campbell v. United States*, 661 F.2d 209, 228 Ct.Cl. 661, 675 (1981). It is therefore irrelevant that there is no matching of income and expense between Harolds Club and its customers.

Defendant additionally avers that the tax court opinion in *World Airways, Inc. v. Commissioner*, 62 T.C. 786 (1974), *aff'd*, 564 F.2d 886 (9th Cir.1977), supports its position that the first prong of the "all events" test has not been met by plaintiff. We disagree. The facts in *World Airways* showed that the plaintiff deducted estimated costs for future overhauls of its aircraft engines and airframes. Plaintiff argued that it was under contractual obligations to pay these costs and, thus, the liability was "fixed." The deduction was denied by the tax court because the expense was a contingent liability. The tax court held that the contracts merely obligated the *performance* of the overhauls at a future date and the plaintiff was under no obligation to pay until an overhaul was actually performed. 62 T.C. at 802. In the instant case, it is payment, not performance, that is obligated.

The liability was not found to be "fixed" in *World Airways* because the contracts could have been modified *at any time* by the parties; the contracts in that case "did *not* fix the fact of [plaintiff's] liability for the amounts accrued." *Id.* (Emphasis supplied.) If the deductions taken in *World Airways* were allowed, a deduction would have been permitted for an expendi-

ture that might have never occurred. In the present case, the liability is *unconditionally fixed* by § 463.310 of the Nevada Revised Statutes which gives full force and effect to Nevada Gaming Regulation § 5.110. *See* text, *supra*. In this action, the "guaranteed" jackpot liability becomes fixed for the taxable year on midnight of the last day of the fiscal year. Because "the accrual of a deduction item is permitted only in the taxable year when the obligation to pay it is unconditionally fixed," *id.*, this court is compelled to allow the deductions taken by Harolds Club.

The "all events" test, because it is to be applied to the particular facts presented in each different circumstance, must be applied on an *ad hoc* basis. The test is designed to aid taxpayers and the courts in determining when an accrued expense may be deducted, and to prevent various forms of tax evasion by preventing the deduction of contingent liabilities. It is clear that the IRS will not allow taxpayers to alter their tax liabilities *sua sponte* by deducting contingent liabilities. In the present case, however, only the Nevada State Legislature can alter the "guaranteed" jackpot liabilities of the casinos in that state. Under this circumstance, the claimed deduction satisfies the requirements of the "all events" test. The deduction is therefore a valid one under an accrual method of accounting, and should be allowed.

### CONCLUSION

Based upon the foregoing discussion, this court concludes that the deductions taken by Harolds Club were timely. Therefore, defendant's motion for summary judgment is DISMISSED, and plaintiff's motion for summary judgment is GRANTED.

The parties are hereby directed to submit to the court a joint stipulation as to the amount of the tax refund no later than July 30, 1984. Upon receipt of such stipulation,

---

**7.** The problem that the *Nightingale* court does not address is that accrued income is *always* subject to tax.

the Clerk of the Court shall enter judgment for plaintiff accordingly.

IT IS SO ORDERED.

