[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this tax appeal is whether the reduction to a taxpayer's federal basis in the stock of a subchapter S corporation, which was attributable to the pass-through of losses that were deducted for federal income tax purposes, is excluded when computing the taxpayer's adjusted gross income in determining his or her tax liability under the Connecticut personal income tax.
The plaintiffs, William and Marjory Berkley, are married individuals residing in Greenwich, Connecticut. William Berkley owned stock in three subchapter S corporations pursuant to section 1367(a) of the Internal Revenue Code of 1986, as amended (Code) known as Farm Acquisition Corp., Interlaken Grove Investors, Inc., and Caring Communities, Inc. When preparing their federal income tax return for 1994, the Berkleys reported that the stocks in the three S corporations were worthless. In computing the basis of these worthless stocks, for federal tax purposes, the Berkleys were required to report only the remaining federal basis in the stocks. The total amount of the losses passed through to the Berkleys from the three S corporations for 1988, 1989 and 1990, exclusive of depreciation or amortization, was $6,541,489. The parties agree that this figure is the "Contested Basis Adjustment," and the plaintiffs' claim is limited to this adjustment. Since Connecticut did not have an income tax prior to 1991, the losses incurred by the Berkleys from the three S corporations were never used in computing a Connecticut income tax return. This is so because Connecticut had CT Page 10611 no personal income tax prior to 1991. Prior to 1991 Connecticut had a capital gains, dividends, and interest income tax which was based on the federal adjusted gross income. This gives rise to the problem in this case where the taxpayer, because of the type of tax, must reduce his or her basis in assets because of losses, and therefore pays a higher tax when the asset is sold. In other words, if the taxpayer reduces his or her tax liability by deducting losses from income, later if the asset is sold at a profit, the government recaptures the value of the loss for tax purposes. However, it is the plaintiffs' claim that when computing the Connecticut capital gains, dividends and interest income tax, the taxpayer makes no use of the losses of the asset, yet must use the losses to reduce the basis of the asset when sold.
Pursuant to General Statutes § 12-730, the plaintiffs appealed the decision of the commissioner assessing against the plaintiffs an additional Connecticut income tax for taxable year 1994 of $393,263.01. The plaintiffs allege that the commissioner erroneously determined that the plaintiffs' 1994 income tax should be computed without regard to the principles enunciated inBello v. Commissioner, Superior Court, Tax Session, Docket No. 361968 11 CONN. L. RPTR. 339 (April 20, 1994, Blue, J.).
The plaintiffs argue that the treatment of S corporation shareholders prior to 1991, when Connecticut had a capital gains, dividend and interest income tax but no personal income tax, creates a disparity of treatment between the federal income tax and the Connecticut income tax. The plaintiffs rely on the "tax benefit rule" enunciated in Bello v. Commissioner, supra, that "[t]he purpose of the rule is to allay `some of the inflexibilities of the annual accounting system.' HillsboroNational Bank v. Commissioner, 460 U.S. 370, 377 (1983)." Id., p. 1.
The federal income tax system relies upon annual accounting.Allstate Ins. Co. v. U.S., 936 F.2d 1271, 1273 (Fed. Cir. 1991). The concept of annual accounting was recognized by the U.S. Supreme Court as a "practical necessity if the federal income tax is to produce revenue ascertainable and payable at regular intervals." Id., quoting Hillsboro National Bank v. Commissioner,supra, 460 U.S. 377. "Annual accounting, however, does not accommodate transactions which remain open at year's end or reopen in later years. Therefore, courts created the tax benefit rule to `approximate the results produced by a tax system based on CT Page 10612 transactional rather than annual accounting.'" Allstate Ins. Co.v. U.S., supra, 936 F.2d 1273-74, quoting Hillsboro National Bankv. Commissioner, supra, 460 U.S. 381.
"The tax benefit rule states that a taxpayer may exclude from income amounts recovered from a previously deducted loss to the extent the previous deduction generated no tax benefit. See26 U.S.C. § 111 (1954)." Allstate Ins. Co. v. U.S., supra, 936 F.2d 1274. The tax benefit rule is alive and well in Connecticut. See Bello v. Commissioner, supra. "The converse is also true. The rule also requires a taxpayer to include in income amounts recovered from a previously deducted loss to the extent the previous deduction generated a tax benefit. . . The rule, therefore, accommodates transactions which extend over several annual accounting periods." Allstate Ins. Co. v. U.S., supra. That is the position of the plaintiffs. The plaintiffs claim that they were not allowed to use the pass through losses of the three S corporations in calculating their 1988, 1989 and 1990 Connecticut capital gains dividends and interest income tax. Yet, in calculating their 1994 Connecticut personal income tax, the basis of the worthless stock of the three S corporations, declared in 1994 was required by the commissioner, to reflect the pass through losses by adding the losses to the basis in 1994.
The commissioner's basic argument is that the plaintiffs did use the pass through losses of the three S corporations when calculating their 1988, 1989 and 1990 Connecticut capital gains, dividend and interest income tax. The commissioner claims that when the plaintiffs were required by General Statutes §§12-505 through 12-522 to use the taxpayer's federally adjusted gross income, the taxpayers were in fact taking advantage of the pass through losses of the three S corporations because the federal adjusted gross income for 1988, 1989 and 1990 reflected these losses.
Plaintiffs' capital gains, dividends and interest income were as follows:
 Year Capital Gains Dividends Interest Total 1988 $ 1,971,992 $ 920,035 $474,102 $ 3,366,129 1989 $ 2,640,528 $3,642,766 $651,771 $ 6,935,065 1990 $12,359,591 $1,878,457 $391,381 $14,629,429
$24,930,623
CT Page 10613
(See Stipulation of Facts, paras. 40, 44, 49.)
Plaintiffs' adjusted gross income reported on their federal income tax form 1040 was as follows:
 Year Federal Adjusted Gross Income 1988 loss of $1,748,293 1989 loss of $2,489,113 1990 loss of $654,747
(See Stipulation of Facts, paras. 43, 47, 48, 52, 53.)
It is true, as plaintiffs argue in their brief (p. 13) that Connecticut had no provision for the use of pass through losses to reduce the capital gains, dividends and interest subject to the Connecticut capital gains, dividends and interest income tax in the period 1988 through 1990. This is so because Connecticut used the federal adjusted gross income principle rather than develop a separate process for reporting state gains, dividends and income. The plaintiffs use this argument to support their position that since the pass through losses of the three S corporations were not used to specifically reduce the Connecticut capital gains, dividends and interest, that in fact these pass through losses were not utilized to reduce their Connecticut income earned during the years 1988 through 1990.
The issue to be decided in this case is whether the pass through losses of the three S corporations were in fact used for Connecticut capital gains purposes during 1988-1990. The reason we center on this issue is because the tax benefit rule is equitable in nature, and if the taxpayers have benefitted [benefited] from the pass through losses of the S corporations, they cannot complain of inequities in the treatment of losses of the S corporations.
The plaintiffs seek to distinguish between "deductions" and "recoveries" on the one hand and "tax benefit" and "no tax benefit" on the other hand. Deductions and recoveries arise from the treatment given to losses and gains to income. The tax code allows for losses to be deducted against income to reduce tax liability, whereas recoveries are required to be taxed as recoupment of losses previously taken against income. Tax benefit however is founded on the question of whether the loss generated a tax benefit. Conversely, if there is a tax benefit generated by CT Page 10614 the losses, the income derived from these losses must be recovered upon the sale of the asset at a profit.
The plaintiffs also distinguish between losses and gains and tax rates. The plaintiffs acknowledge that their federal adjusted gross income for 1988 through 1990 would have been positive if the losses from the three S corporations had not been included in their federal tax returns for this same period.
Part of the reason why the plaintiffs reported losses for their 1988, 1989 and 1990 federal adjusted gross income was due to the inclusion of the pass through losses of the three S corporations owned by William Berkley. Although these pass through losses were applied to the basis of the three S corporations on the federal level thereby reducing their basis in the stocks of these corporations, no comparable adjustment was made on the state level since Connecticut did not have a state personal income tax which could account for pass through losses during the years 1988, 1989 and 1990. While the plaintiffs' basis in the stock of the three S corporations was reduced to a loss of $3,623,671 as of 1994, they claim that the losses were never used to reduce the basis of the three S corporations on the state level for 1988, 1989 and 1990. However, as the commissioner points out, the pass through losses of the three S corporations were used by the taxpayers in 1988, 1989 and 1990 to reduce their federal adjusted gross income which the taxpayers used to avoid paying any Connecticut capital gains, dividends and interest income tax. The parties stipulated that "[i]f Plaintiffs' federal adjusted gross income for each of the years 1988, 1989, and 1990 had not been reduced by deduction of the losses attributable to Mr. Berkley's ownership of the stock in the three S corporations discussed above, their Connecticut Capital Gains, Dividends, and Interest Income Tax liability for those years would have been as follows:
 1988 $223,988.23 1989 $645,630.53 1990 $427,570.87"
(Stipulation of Facts, para. 55.)
Although the plaintiffs earned a total of $24,930,623 in capital gains, dividends and interest income during the period of 1988, 1989 and 1990, they paid no state tax on this income. The reason that the plaintiffs paid no state tax on over twenty-four CT Page 10615 million dollars of income was due to the structure of the state capital gains, dividend and interest income law being based on the federal system of adjusting income. As an example, in 1988, General Statutes § 12-506(a)(2) imposed a tax at a rate of 7% on all gains on the sale or exchange of capital assets. However, since the plaintiffs reported that their 1988 federal adjusted gross income was a loss of $1,748,293, no capital gains tax was due the state of Connecticut. In 1989, the plaintiffs reported that their 1989 federal adjusted gross income was a loss of $2,489,113, so no capital gains tax was due the State of Connecticut. In 1990, the plaintiffs reported that their 1990 federal adjusted gross income was a loss of $654,747, so no capital gains tax was due the State of Connecticut. Since the plaintiffs' federal adjusted gross incomes for 1988, 1989 and 1990 were reported as losses, the plaintiffs were also exempt from paying any state tax on dividend and interest income.
The tax benefit rule is an equitable rule designed to prevent unacceptable inequities and distortions in the field of taxation. See Bello v. Commissioner, supra, pp. 9-10.
Although the plaintiffs' argument is that they did not benefit from the pass through losses that depleted the basis of the three S corporations in 1988, 1989, and 1990; since Connecticut did not have a personal income tax to take advantage of these losses, clearly, the plaintiffs benefitted [benefited] from these same losses which were used to reduce the federal adjusted gross income in 1988, 1989, and 1990, upon which the Connecticut capital gains, dividend and interest income tax was based. We are guided by the case of Alice Phelan Sullivan Corp. v. UnitedStates, 381 F.2d 399, 401-402 (U.S.Ct. of Claims 1967), wherein the court stated that the tax benefit rule "permits exclusion of the recovered item from income so long as its initial use as a deduction did not provide a tax saving. . . But where full tax use of a deduction has been made and a tax saving thereby obtained, the extent of savings is considered immaterial. The recovery is viewed as income to the full extent of the deduction previously allowed."
In the present action, the Berkleys avoided paying a Connecticut capital gains, dividend and interest income tax on a substantial amount of income because of the pass through losses of the three S corporations were used in the determination of their adjusted gross income for 1989-90. They are not now entitled to a double benefit by excluding the losses in the determination of CT Page 10616 the basis of the three S corporations for capital gains purposes in determining their adjusted gross income under the Connecticut personal income tax.
Accordingly, the plaintiffs' appeal is dismissed without costs to either party.
Arnold W. Aronson Judge Trial Referee