**ALLSTATE INSURANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

**No. 90–5114.**

United States Court of Appeals,
Federal Circuit.

June 19, 1991.

Michael M. Conway, Hopkins & Sutter, Chicago, Ill., argued for plaintiff-appellant. With him on the brief were Patrick A. Heffernan and Michael R. Schlessinger.

Robert Higgins, Atty., Tax Div., Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and David I. Pincus, Attys.

Before NIES, Chief Judge, LOURIE, and RADER, Circuit Judges.

RADER, Circuit Judge.

Allstate Insurance Company (Allstate) appeals from the final decision of the United States Claims Court denying its claim for a tax refund. The Claims Court held that the tax benefit rule did not apply to Allstate's subrogation recoveries. *Allstate Ins. Co. v. United States*, 20 Cl.Ct. 308 (1990). This court reverses and remands.

## BACKGROUND

Allstate is a property and casualty insurance company subject to taxation under sections 831 and 832 of the Internal Revenue Code. 26 U.S.C. §§ 831, 832 (1954).[1] Section 832 includes underwriting income within insurance company gross income. 26 U.S.C. § 832(b)(1). Underwriting income, in turn, consists of premiums earned less losses incurred and expenses. 26

U.S.C. § 832(b)(3). Section 832(b)(5) defines "losses incurred" to include paid losses minus recoverable subrogation and salvage. "Losses incurred" also includes any increase or decrease in the reserve for unpaid losses. Thus, the following equation defines underwriting income:

Income = premiums earned − ((losses paid − subrogation) + change in unpaid loss reserve).

In 1969, millions of Allstate's auto insurance customers had accidents or other losses covered under the terms of their policies. These policy holders submitted claims to Allstate for payment. Upon submission of a claim, Allstate evaluated the claim and made an addition to its unpaid loss reserves. Allstate later paid many of these claims, often in sums different from the original claimed amount. Upon payment, Allstate subtracted the original estimated amount from its unpaid loss reserves and added the amount actually disbursed to its paid losses account. In this manner, the unpaid loss reserves reflected Allstate's potential future payment obligations. Allstate then had the option to seek recovery of the amounts paid from any responsible third party (subrogation) or to sell damaged property to which it had taken title (salvage). Because subrogation and salvage affect the losses deduction identically, this opinion uses the term "subrogation" to refer to both.

In 1969, Allstate calculated its taxable income pursuant to section 832. Allstate earned premiums of $1,314,106,387 in that year. Allstate's losses incurred deduction was $852,173,752. This deduction included $748,421,296 in paid losses and an increase of $103,752,456 in unpaid loss reserves. In 1969, Allstate also recognized $40,277,795 in net capital gain. Considering underwriting income, investment income, and deductions, Allstate's total taxable income in 1969 was $38,487,656.

To figure its 1969 tax, Allstate used the alternative tax calculation for corporations under 26 U.S.C. § 1201. Section 1201 per-

---

**1.** Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.

mitted a corporation to pay a lesser tax on net capital gain than on ordinary income (total taxable income less net capital gain). In 1969, Allstate's net capital gain exceeded its total taxable income by $1,790,139. Thus, Allstate had no ordinary income and paid a tax only on its net capital gain.

In any taxable year, subrogation directly affects the losses incurred deduction and gross income. Greater subrogation amounts reduce the losses incurred deduction and increase gross income. Likewise, less subrogation increases the losses incurred deduction and lowers gross income. A $1,790,139 increase in 1969 subrogation would have reduced Allstate's losses incurred deduction and increased its gross income by the same amount. Allstate's 1969 gross income could have increased by $1,790,139 without exceeding its net capital gains. Allstate's 1969 tax liability would have remained the same. Thus, $1,790,139 of Allstate's 1969 losses incurred deduction did not provide any tax benefit. In other words, Allstate could have recovered $1,790,139 in subrogation in 1969 without increasing its tax liability.

In 1971, 1978 and 1980, Allstate recovered subrogation which related to claims filed in 1969. Allstate timely filed its tax returns for each of the three years and paid the tax due. In 1981, Allstate filed a claim for a refund with the Internal Revenue Service (IRS). Allstate asserted that it need not have included as income that portion of the subrogation received which related to earlier losses deducted without tax benefit. After the IRS denied this claim, Allstate brought suit in the Claims Court seeking reimbursement for tax overpayments for these three years. The Claims Court examined the 1971 claim. The parties stipulated that a final ruling on the 1971 claim governs all three years.

In 1971, Allstate received $2,720,632 in subrogation recoveries.[2] This amount reduced the losses paid portion of Allstate's losses incurred deduction and increased its 1971 gross income. In this suit, Allstate

seeks to exclude from its 1971 tax return the $1,790,139 of subrogation from losses for which it received no tax benefit in 1969. If allowed to exclude the $1,790,139 of subrogation from its 1971 return, Allstate deserves a tax refund.

## DISCUSSION

A trial court may grant summary judgment when the case presents no genuine issue of material fact and the law entitles the moving party to judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). On appeal, this court is not bound by the trial court's ruling that no material facts were in dispute. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). Rather, this court reviews the Claims Court's grant of summary judgment *de novo*, drawing all inferences in this case in a light most favorable to the non-moving party. *Id.* at 1391.

### The Tax Benefit Rule

This case presents a straightforward question of law. This court must determine whether the tax benefit rule permits Allstate to exclude 1971 subrogation from offsets to losses paid, and thus, from gross income.

The federal income tax system relies upon annual accounting. The Supreme Court recognized this concept as a "practical necessity if the federal income tax is to produce revenue ascertainable and payable at regular intervals." *Hillsboro Nat'l Bank v. Commissioner*, 460 U.S. 370, 377, 103 S.Ct. 1134, 1140, 75 L.Ed.2d 130 (1983) (citing *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 365, 51 S.Ct. 150, 152, 75 L.Ed. 383 (1931)). Annual accounting, however, does not accommodate transactions which remain open at year's end or reopen in later years. Therefore, courts created the tax benefit rule to "approximate the results produced by a tax system based on transactional rather than annual account-

---

**2.** Allstate asserts as error the Claims Court's failure to recognize that this amount was only that portion of its 1971 subrogation recoveries which were directly related to losses incurred in 1969. If error, it is harmless.

ing." *Id.*, 460 U.S. at 381, 103 S.Ct. at 1142.

■ The tax benefit rule states that a taxpayer may exclude from income amounts recovered from a previously deducted loss to the extent the previous deduction generated no tax benefit. *See* 26 U.S.C. § 111 (1954). The converse is also true. The rule also requires a taxpayer to include in income amounts recovered from a previously deducted loss to the extent the previous deduction generated a tax benefit. *Hillsboro Nat'l Bank*, 460 U.S. at 381 n. 12, 103 S.Ct. at 1142 n. 12 ("This exclusionary rule and the inclusionary rule ... are generally known together as the tax benefit rule."). Thus, if a taxpayer recovers in 1971 a portion of a loss which it deducted in 1969, that taxpayer must include or may exclude the recovery from income depending upon whether the 1969 deduction provided the taxpayer a tax benefit. The rule, therefore, accommodates transactions which extend over several annual accounting periods.

■ The insurance industry often encounters transactions which reopen in later years. The intitial tax reporting of these transactions may turn out to be inflated or underestimated. Thus, the tax benefit rule may effectively reduce or increase a company's income in a later year. Specifically, insurance companies often recover subrogation years after the loss which gave rise to the recovery. Thus, the business must report loss deductions and subrogation income—though springing from the same loss event and claim—in different years. In such cases, the tax benefit rule prevents tax inequities or windfalls and encourages accurate annual reporting. For some transactions, the tax benefit rule may require an insurer to include a later subrogation within income; for other transactions, the same rule may permit the insurer to exclude the recovery from income.

As the Claims Court correctly recognized, the tax benefit rule has two aspects, inclusion and exclusion. *Allstate*, 20 Cl.Ct. at 313. The inclusionary aspect requires a taxpayer to include within income recovery of an item previously deducted. The exclu-

sionary aspect permits a taxpayer to exclude from income that portion of a recovery not resulting in a prior tax benefit.

The Claims Court erred in concluding that section 832 precludes application of the tax benefit rule to subrogation. Because section 832 refers to subrogation recoveries as annual offsets within the losses incurred deduction, 26 U.S.C. § 832(b)(5), the court held that subrogation could not be income subject to the tax benefit rule. *Allstate*, 20 Cl.Ct. at 314. Because subrogation could not be income, according to the Claims Court, the inclusionary aspect (and hence the exclusionary aspect) of the tax benefit rule does not apply. *Id.*

To the contrary, subrogation fits well within the tax benefit rule. By its terms, section 832 ensures that subrogation recoveries increase dollar-for-dollar Allstate's gross income. Failure to collect subrogation results in no such change. Subrogation recoveries, or lack thereof, directly affect gross income. Thus, section 832, in effect, treats subrogation as income subject to the tax benefit rule. *See American Fin. Corp. v. Commissioner*, 72 T.C. 506 (1979).

Section 832 treats subrogation as income under the tax benefit rule for good reason. If the tax code's characterization of subrogation as an offset precluded its treatment as income, a taxpayer would not have to include subrogation in income even if the subrogation exceeded losses paid for that tax year.

Subrogation is, by definition, a recovery from a previously deducted loss. Thus, a taxpayer—under the inclusionary aspect of the tax benefit rule—must include subrogation within income. The taxpayer may then exclude that share of subrogation from income to the extent the previous deduction generated no tax benefit. Subrogation, by its nature, demands application of the tax benefit rule. Section 832 does not bar that application.

The tax benefit rule, as mentioned earlier, operates to ensure that annual accounting requirements do not create tax inequities. The rule's application to subrogation

fulfills that purpose. If Allstate both incurred losses and recovered subrogation from those losses in 1969, the offset would generate no net tax effect. In that hypothetical situation, Allstate could have received $1.79 million more in subrogation without affecting its 1969 tax liability. However, this neat hypothetical situation did not occur. Allstate did not recover its subrogation from the 1969 claimed losses until 1971.

The tax benefit rule ensures that subrogation from Allstate's 1969 losses paid, though not recovered until 1971, still creates the same tax effect. Under the rule, Allstate pays no additional taxes simply because its subrogation recoveries and the related loss did not occur in the same year. Because it received no tax benefit for $1.79 million of its 1969 losses paid, Allstate may exclude the reimbursement of those losses from 1971 subrogation. Allstate reaps the same tax consequences that would have occurred if both loss and subrogation occurred in the same year.

Section 832 requires inclusion of subrogation within income by offsetting it against the losses paid part of the losses incurred deduction. Section 832 thus accommodates unique attributes of the insurance business. Unlike other businesses, insurance companies generate income in advance of related costs. Insurance companies receive premiums before incurring the obligation to pay claims. Moreover considerable time may pass between a claim for insurance recovery and actual payment on the claim. If section 832 taxed premiums immediately as income and permitted deductions only when later fixed, the tax code would tax large sums as income which the insurance company would never realize as gain due to its obligation to satisfy claims from the premium fund. *See Bituminous Casualty Corp. v. Commissioner,* 57 T.C. 58, 77 (1971).

Section 832(b)(5) attempts to tax realized gain by permitting the taxpayer to subtract subrogation from the losses paid part of the losses deduction. This treatment also recognizes that losses incurred deductions are often later shown inappropriate by virtue of the subrogation recovery. This provision does not preempt application of the tax benefit rule, but triggers it. Nothing in prior Court of Claims decisions or the language of section 832 precludes application of the tax benefit rule to subrogation.

Section 111 of Title 26, United States Code, provides statutory support for application of the tax benefit rule to insurance subrogation. 26 U.S.C. § 111 (1954). Section 111 incorporated the exclusionary aspect of the tax benefit rule into the tax code. Section 111 excludes from gross income recovery amounts from bad debts, prior taxes, or delinquencies to the extent those recoveries did not create a prior tax reduction. 26 U.S.C. § 111(a). Although the statute refers only to bad debts, prior taxes, and delinquencies, the regulations state that the "rule of exclusion ... applies equally with respect to all other losses, expenditures, and accruals made the basis of deductions from gross income for prior taxable years...." Treas.Reg. § 1.111–1(a) (1986). Thus, under section 111, Allstate can exclude $1.79 million of its 1971 subrogation from income because a like amount of its 1969 losses incurred deduction "did not result in a reduction of any tax." *Id.*

In sum, the tax benefit rule applies to subrogation recoveries. Section 832 does not require a contrary result. Because it received no tax benefit from $1,790,139 of its losses incurred deduction in 1969, Allstate could exclude that amount from its subrogation income in 1971 if the recovery springs from the 1969 claimed losses.

### Nexus Between Losses and Subrogation

■ While the tax benefit rule applies to subrogation, the taxpayer must show a direct link between the loss (deducted without tax benefit) and the later recovery. *See, e.g., Waynesboro Knitting Co. v. Commissioner,* 225 F.2d 477, 480 (3rd Cir. 1955). The Claims Court erroneously required Allstate to show a nexus between its 1971 subrogation recoveries and its 1969 *losses paid. Allstate,* 20 Cl.Ct. at 316. The required nexus, however, is between Allstate's 1971 subrogation recovery and

its earlier deduction without tax benefit, namely its 1969 losses incurred deduction.

■ For claims filed in 1969, Allstate first estimated how much the claim was worth. Allstate then added this estimate to its unpaid loss reserves. Regardless of when Allstate later paid the claim, the year in which Allstate made the initial addition to the unpaid loss reserve remained the focus. If it paid the claim in 1969, Allstate added that amount to paid losses and deducted the original estimate from the loss reserves. The addition to and the deduction from the loss reserves cancelled each other out. Thus, Allstate's net loss for 1969 is the amount of the original estimate which proves warranted by subsequent events. If Allstate pays an amount greater than the original estimate, the deduction for 1969 is the amount actually paid. Thus, 1969 calculations determine whether Allstate received a tax benefit from the deduction.

The same is true if Allstate makes the payment in subsequent tax years. If it made the payment on the 1969 claim in 1971, Allstate took a net loss in 1969 equal to the increase in the loss reserves. Allstate's 1971 payment would again increase the losses paid by the amount of the payment and decrease the loss reserves by the amount of the original estimate. Again these transactions would offset each other. Yet Allstate's net loss in 1969, depending on circumstances, may or may not have generated a tax benefit. Thus, when Allstate pays the claim is irrelevant. The initial addition to the loss reserve triggers Allstate's deduction for 1969. The deduction produces or fails to produce a tax benefit to Allstate in that same year.

The trial court must determine whether Allstate received a tax benefit from the deduction by examining the 1969 tax year. Any subrogation recovered from a loss in 1969 is an offset to the losses paid component of the losses incurred deduction, which gives rise to income, unless Allstate received no tax benefit from the 1969 deduction.

In this case, Allstate presented Attachment 5 to show the required nexus. At-tachment 5 shows when each claim was filed for which Allstate received subrogation recoveries in 1971. Allstate did not make an addition to its unpaid loss reserves until a policyholder actually filed a claim. The claims at issue were filed in 1969. By identifying the 1971 subrogation recovery with the filed claim, Allstate traced its subrogation back to the 1969 losses incurred deduction. Allstate has shown the required nexus. Because $1,790,139 of Allstate's 1969 losses incurred deduction did not result in a tax benefit, Allstate may exclude this amount from its 1971 subrogation.

## CONCLUSION

This court concludes that the Claims Court erred as a matter of law by holding the tax benefit rule inapplicable to subrogation. Thus, this court reverses the Claims Court's grant of summary judgment for the Government. This court also reverses the denial of Allstate's motion for summary judgment.

The Government has not disputed the content of Allstate's proof in Attachment 5. Rather, the Government simply asserts that Attachment 5 does not show a nexus between the loss paid and the subrogation recovery. However, Allstate need only show a nexus between the incurred loss and the subrogation recovery. Allstate has shown this nexus. This court remands with instructions to enter summary judgment for Allstate.

**REVERSED AND REMANDED.**