**AMERICAN MUTUAL LIFE INSURANCE COMPANY AND SUBSIDIARIES, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–5078.

United States Court of Appeals, Federal Circuit.

Oct. 3, 2001.

Norman Sinrich, Kostelanetz & Fink, LLP, of New York, NY, argued for plaintiff-appellant. With him on the brief was Nancy W. Pierce. Of counsel was Judy Kramer.

David I. Pincus, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Paula M. Junghans, Acting Assistant Attorney General; and Edward T. Perelmuter, Attorney.

Before BRYSON, GAJARSA and LINN, Circuit Judges.

## DECISION

GAJARSA, Circuit Judge.

American Mutual Life Insurance Co. ("American Mutual") appeals from a grant

of summary judgment by the United States Court of Federal Claims finding that income resulting from releases in life insurance reserves was required to be included as taxable income because the tax benefit rule is unavailable where the event, in this case the releases, does not meet the "fundamental inconsistency" test and where the taxpayer receives a tax benefit. *Am. Mut. Life Ins. Co. v. United States,* 46 Fed. Cl. 445 (2000). For the reasons discussed below, we affirm.

## BACKGROUND

■ The tax benefit rule, codified in part as section 111 of the Internal Revenue Code of 1986 ("the Code"), was established to ensure that if a taxpayer takes a deduction attributable to a specific event, and the amount is recovered in a subsequent year, income tax consequences of the later event depend in some degree on the prior related tax treatment. *Hillsboro Nat'l Bank v. Comm'r,* 460 U.S. 370, 380–82, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983). For certain types of events, when the deduction and recovery occur in the same tax year, taxpayers are typically able to offset the tax consequences of the deduction against those associated with the recovery. Where the recovery occurs in a different tax year, the "inclusionary" aspect of the rule, or alternatively, a provision of the Code, may require the recovery to be taken into taxable income. The "exclusionary" aspect of the rule may limit the inclusion if the "exclusionary" aspect applies. *Id.* at 379 n. 8, 103 S.Ct. 1134.

■ The "inclusionary" aspect of the rule enables the government to tax as income an amount recovered in a later year corresponding to an event for which a deduction was taken by the taxpayer in an earlier year. For instance, a taxpayer might write off a bad debt as a loss and take a deduction in that year. Should the taxpayer recover that amount in a later tax year, the taxpayer would receive that income tax-free were it not for the rule. Thus, the rule prevents the taxpayer from receiving a windfall by deeming the recovery to be taxable income.

■ The "exclusionary" component of the rule permits a taxpayer to exclude from deemed income amounts recovered. Where deductions taken in earlier tax years, including those associated with life insurance reserve increases, result in no tax benefit, taxpayers may be entitled to exempt from deemed income funds recovered in a later tax year.

In accordance with state law, each time a life insurance company issues a policy it must allocate a sufficient amount to a reserve to pay the benefits should the policy come due. Until adequately funded pursuant to actuarial determinations, the reserve amount increases each year. Additions to reserves contribute to deductions while annual decreases in reserves are added to income.

As the Court of Federal Claims indicated in its decision, pursuant to the Internal Revenue Code of 1954, as amended by the Life Insurance Company Income Tax Act of 1959, Subchapter L, investment income was taxed differently from underwriting income (which includes, *inter alia,* premiums on life insurance policies). Taxes were assessed against the lesser of the underwriting income and investment income. Sec. 802(b). Where underwriting income exceeded investment income, the previous version of the Code, 26 U.S.C. § 802 (1954) (amended 1959), imposed a tax on the net investment income (less a standard deduction of $250,000), and taxed 50% of underwriting income that exceeded the investment income. Sec. 802(b).

A specific, detailed and comprehensive formula was used to determine the impact

reserve increases had on taxable income. Suffice it to say that, because an increase in reserves resulted in a decrease in investment income, the full amount of reserve increases operated as a deduction, although the effect of the calculation could mean that each dollar deducted reduced income by a fraction of a dollar. Sec. 804 and 805. Further, full reserves, that is, the aggregate reserves for the current year and all unreleased reserves for prior years, contributed to the calculation of the deduction.

At that time, the Code listed several deductions against underwriting income that may have been taken by life insurance companies, including reserve increases and dividends paid to policyholders. The dividends-paid deduction was limited to the amount that underwriting income exceeded taxable investment income. Once underwriting income was reduced to parity with investment income, dividend deductions had no tax effect. Section 809(b)-(d); *Am. Mut.*, 46 Fed. Cl. at 449.

During the tax years 1962 through 1978, and again in 1981, American Mutual experienced aggregate net reserve increases. Throughout the 1962–1981 period, American Mutual was taxed only on its investment income because the reserve-based deductions reduced underwriting income to the level of investment income. Before the Court of Federal Claims, American Mutual conceded that it had a repeated tax benefit from each year's net additions to reserves. The parties dispute the size of that benefit, but agree that it was more than zero, if not a full dollars worth, for each dollar of reserve increase.

American Mutual argued below that it received an insufficient tax benefit from reserve increases in the years 1962–1981. In accordance with the tax benefit rule, American Mutual argued that an amount of reserve releases generated in later tax years, equal to the amount for which the reserve increases led to no tax benefit, should be excluded from income. It estimates the excluded amounts as $12 million in 1988 and $10 million in 1989.

American Mutual argued that it received no tax benefit from the reserve deductions it took. It maintained that to determine accurately whether the reserve increases in a previous year had any tax benefit, underwriting income must be recalculated as though there were no deductions for the reserve increases actually taken. Substituting previously unused dividend deductions for the reserve deductions taken, to the extent, it argues, the Code permitted, American Mutual recalculated its underwriting income. Given such calculations, it concluded that its underwriting income remained the same and that the reserve increase deductions conferred no tax benefit. Therefore, American Mutual argued, the corresponding reserve releases in later tax years should not have been taxed as income.

The Court of Federal Claims determined that American Mutual's underwriting income in these years fell to the level of the investment income as a direct result of the deductions for reserve increases that American Mutual took against underwriting income. The court noted that American Mutual's tax returns showed that it deducted every dollar of its reserve increases, and still had "excess" underwriting income that was further reduced by dividend deductions. Accordingly, the court concluded that American Mutual took full deductions for its reserve increases.

The court concluded that because the reserve deductions reduced American Mutual's taxable income, the reserve deductions did indeed confer a tax benefit. Had there been no change in taxable income, the court suggested that American Mutu-

al's argument would have merit. Because American Mutual realized a tax benefit for each dollar· deducted, the court concluded that the tax benefit rule does not apply to American Mutual's reserve increases.

American Mutual further argued that in accordance with the language of the exclusionary aspect of the tax benefit rule, as articulated in the Code, it is entitled to recover the amounts for which the deductions failed to yield a full dollar-for-dollar benefit. The rule, codified at I.R.C. § 111(a), provides: "[g]ross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year *to the extent* such amount did not reduce the amount of tax imposed by this chapter" (emphasis added). American Mutual argued that the "to the extent" language mandates that taxpayers receive full value for deductions taken where such amounts are later recovered.

Interpreting the phrase "to the extent" to modify "reduce," and not to modify "amount of tax," the Court of Federal Claims concluded that the statute provides that once a deduction reduces taxable income by any amount, the rule becomes inapplicable. Thus, the court rejected American Mutual's contention that the deductions taken with respect to the reserve increases conferred no tax benefit.

Furthermore, the court determined that American Mutual received a full dollar's worth of reduction in underwriting income for each dollar deducted. The court found that American Mutual employed the deductions for reserve increases to decrease its underwriting income to the point that it fell to the level of the investment income. Thus, the court concluded that American Mutual received the full benefit from reserve deductions taken in accordance with the 1959 Act, and would not be entitled to

additional benefits even if the rule were to be applied.

The Court of Federal Claims rejected American Mutual's claim for relief on the additional basis that the tax benefit rule does not apply to the release of life insurance reserves. According to the court, conversion of reserves into income is not an "inconsistent" event, but a fully anticipated event, and does not fit into the category of events covered by the rule. Noting the purpose and function of the provision granting the deduction, and noting that the regulation defines "recovery" commensurate with a collection or sale of a bad debt, refund or credit of taxes, and cancellation of taxes accrued, the court further found that the release of reserves is not an inconsistent event and is not analogous to such forms of recovery. The court concluded that the rule is not a general rule of equity applicable to all transactions that cross tax years.

Nor was the court persuaded that the release of reserves was the type of "inconsistent event" contemplated by the Supreme Court in *Hillsboro National Bank v. Comm'r*, 460 U.S. 370, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983). The court noted that the release of reserves is "an inescapable accounting entry" and is as certain to occur as death. The court found the fact that the reserve increase takes place in one year and the corresponding release usually happens in another is alone insufficient to require application of the rule.

Rejecting American Mutual's claim that the case was controlled by *Allstate Insurance Co. v. United States*, 936 F.2d 1271 (Fed.Cir.1991), the court found that opinion distinguishable as a classic application of the rule in which a loss, later recovered, is deducted without tax benefit. The Court of Federal Claims noted that subrogation clearly constitutes a "recovery," agreeing with this court's statement in *All-*

*state* that, "[s]ubrogation is, by definition, a recovery from a previously deducted loss, . . . . [and] by its nature, demands application of the Tax Benefit Rule." 936 F.2d at 1274. While the casualty insurance company in *Allstate* used reserves to account for potential liability, the Court of Federal Claims further noted that the issue in that case was not the application of the rule to reserves. Rather, it was the application of the rule to deduction of losses later recovered via subrogation. The Court of Federal Claims found that, in contrast to *Allstate*, the facts before it did not involve recovery of previous amounts paid and that nothing analogous to subrogation was involved.

American Mutual appeals from the judgment of the Court of Federal Claims. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

■■ We review questions of statutory interpretation without deference. *U.S. Steel Group v. United States,* 225 F.3d 1284, 1286 (Fed.Cir.2000). This court reviews a grant of summary judgment by the Court of Federal Claims without deference. *Glass v. United States,* 258 F.3d 1349, · 1353 (Fed.Cir.2001). The moving party is entitled to summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing the trial court's grant of summary judgment, this court draws all reasonable inferences from the evidence in

favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

American Mutual seeks to exclude from income those amounts corresponding to reserve increases for which it took a full deduction but claims that it received only a partial tax benefit. American Mutual contends that it could have taken dividend deductions, in place of the reserve increase deductions it exercised, with the same overall tax results. Accordingly, American Mutual argues that it is entitled to an exclusion from income on the basis that the reserve deductions generated no tax benefit.

Alternatively, relying on the language of § 111 of the Code, American Mutual maintains that it is entitled to a refund "to the extent" the deductions taken failed to yield a tax benefit. Thus, American Mutual argues that it must include the 1988 and 1989 reserve decreases in its income only to the extent the related reserve increases in prior years reduced its taxable income. American Mutual maintains that it is entitled to exclude the balance from taxable income. We are not persuaded by either argument.

■ The Supreme Court in *Hillsboro* recognized that courts must apply the tax benefit rule on a case-by-case basis. *Hillsboro,* 460 U.S. at 385, 103 S.Ct. 1134. A reviewing court should evaluate the facts and circumstances of each case in light of the purposes and functions of the tax provisions at issue. *Id.* The tax benefit rule does not apply to all transactions that span multiple tax years.[1] Further, where, as in

1. The issue here is whether the tax benefit rule applies, which turns on whether the reserve releases are "fundamentally inconsistent." American Mutual makes much of the

Supreme Court's "with and without deductions" analysis in *Hillsboro* as a basis for calculating its purported lack of tax benefit. *Hillsboro,* 460 U.S. at 392, 103 S.Ct. 1134.

this case, the events giving rise to the tax benefit question are governed by provisions of the Code, there may be an inherent tension between the tax benefit rule and these provisions. *Id.* The Supreme Court also recognized that there is no blanket rule that the tax benefit rule prevails over the particular provisions of the Code at issue. *Id.* at 386, 103 S.Ct. 1134. It instead directed us to focus on the provisions "that govern these transactions to determine whether the deductions taken by the taxpayers were actually inconsistent with later events and whether specific ... provisions [of the Code] prevail over the principle of the tax benefit rule." *Id.* at 391, 103 S.Ct. 1134.

■ We agree with the Court of Federal Claims that the life insurance reserve releases were not a "fundamentally inconsistent" occurrence or a "recovery": "[i]f there is anything that is consistent and foreseen, it is that life insurance reserves will be released on the coming of one or another of a limited number of defined and inevitable events, the principal one being the certainty of death." *American Mut.,* 46 Fed. Cl. at 453. The Code provisions at issue contemplate the eventual release of the reserves with the purpose of causing the reserve releases to be taken into taxable income. 26 U.S.C. § 809; *American Mutual,* 46 Fed. Cl. at 448, 456. American Mutual seems to equate the "fundamentally inconsistent" test with the Supreme Court's statement in *Hillsboro* that "if the event had occurred within the same tax-

able year, it would have foreclosed the deduction." *Hillsboro,* 460 U.S. at 385–85, 103 S.Ct. 1134. We do not read the test so narrowly the "deduction foreclosed" inquiry is but one facet of the fundamentally inconsistent test. Further, the deduction foreclosed inquiry is not helpful in the context of life insurance reserves. If a reserve release is due to payment on a life insurance policy, the Code requires taking the reserve release into income. If the life insurance policy was purchased and paid out in the same year, even if American Mutual would not have taken reserve increase deductions, it still would have reduced its taxable income that year via the expense of paying on the life insurance policy.

The statute, both before and after Congress' 1984 amendments to the Code, contemplated the releases. The Code mandates taking the reserve releases into taxable income. This expresses a purpose to recapture tax when the inevitable or inescapable event occurs. In this vein, we agree with the Court of Federal Claims that American Mutual's beef is with Congress' 1984 amendments to the Code, which required full recognition of the reserve releases as taxable income, as opposed to partial recognition before 1984. Our analysis of the purpose of these provisions must be premised on the 1984 changes in the Code. These changes retained the concept that reserves would eventually be released and taxed, rendering them not fundamentally inconsistent.[2]

---

However, that analysis was within the greater context of the "fundamentally inconsistent" inquiry, and was instructive for the analysis of the statute at issue in Hillsboro, but is not prescriptive for every application of the "fundamentally inconsistent" test. Other important factors can inform this test, including policy input, such as whether Congress has enacted revisions to the provisions a court construes, or replaced one specific system of tax treatment for reserves with another.

**2.** We note that the effect of the exclusion for which American Mutual argues would be that the reserve releases would never be taxed. We cannot infer that Congress had this intent given that it lowered tax rates for life insurance companies in the 1984 amendments while noting life insurance industry concerns with other aspects of those amendments. *American Mutual,* 46 Fed. Cl. at 457–58.

Although the "fundamentally inconsistent" inquiry could end our analysis, we also endorse the Court of Federal Claims' conclusion that even if the exclusionary aspect of the tax benefit rule applied to life insurance reserve releases, it would not exclude them from deemed taxable income. This is because American Mutual took the full dollar amount of tax deduction available for reserves under the then-applicable law. The tax benefit rule "does not guarantee dollar-for-dollar reductions of taxable income for every dollar of deduction." *American Mutual,* 46 Fed. Cl. at 454.

We begin with § 111(a) of the Code, which states, "[g]ross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year *to the extent* such amount did not reduce the amount of tax imposed by this chapter." (emphasis added). In the context of deductions for life insurance reserves, the Court of Federal Claims interpreted that language as rendering the rule inapplicable once a deduction reduces taxable income by any amount. As noted, the court interpreted the phrase "to the extent" as modifying the term "reduce," and not to modify "amount of tax." American Mutual disputes that interpretation of the Code, arguing that it is entitled to recover amounts for which it received only a partial, or fractional, tax benefit, in other words, to the extent the benefit was incomplete.

Again, we agree with the Court of Federal Claims that American Mutual's dispute is with Congress. In 1984 Congress changed the provisions governing reserve releases. Prior to 1984, a dollar of reserve releases resulted in less than a full dollar of increase in taxable income. After 1984, a dollar of reserve releases caused a full dollar increase in taxable income. Against this specific, detailed and comprehensive system of handling life insurance reserves, we agree with the Court of Federal Claims that the disputed language permits resort to the rule only when no benefit was realized on a deduction taken on a per dollar basis.

In this case, once American Mutual exercised its discretion to take the reserve increase deductions, whether or not those deductions yielded less than a dollar-for-dollar tax benefit, it cannot be heard to complain that it received *no* benefit. The Court of Federal Claims correctly concluded that Congress provided a remedy for such inequities within the statute itself, wherein Congress incorporated an across-the-board rate reduction.

■ That the Congress changed the impact of reserve deductions in 1984 to yield a proportional, or dollar-for-dollar deduction, is of no consequence. As the Court of Federal Claims indicated, American Mutual's argument that it is being treated unfairly because the Code as earlier written gave less than a full benefit for such deductions, but has since been amended to provide for dollar-for-dollar deductions, is akin to challenges by taxpayers that they are unfairly burdened by a change in tax rates. *Alice Phelan Sullivan Corp. v. United States,* 180 Ct.Cl. 659, 381 F.2d 399, 402–03 (Ct.Cl.1967). American Mutual must be content with its original decision to deduct its reserve increases from income under the prevailing formula authorized under the Code. We find our view of the applicability of the rule consistent with precedent.

■ In *Hillsboro,* the Supreme Court recognized that in some instances, a change in the law might affect a taxpayer's recovery such that the taxpayer receives less than full benefit. 460 U.S. at 380, 103 S.Ct. 1134. Nevertheless, the Supreme Court explained that transactional equivalence is sufficiently accomplished to the

extent that a taxpayer receives "some" benefit, stating:

> Even this rule did not create complete transactional equivalence. [For example,] the taxpayer might have realized no benefit from the deduction, if, for instance, he had no taxable income for that year. Application of the tax benefit rule as originally developed would require the taxpayer to recognize income on the repayment, so that the net result of the collection of the principal amount of the debt would be recognition of income. Similarly, the tax rates might change between the two years, so that a deduction and an inclusion, though equal in amount, would not produce exactly offsetting tax consequences. Congress enacted § 111 to deal with part of this problem. Although a change in the rates may still lead to differences in taxes due, *see Alice Phelan Sullivan Corp. v. United States*, 381 F.2d 399, 180 Ct.Cl. 659 (Ct.Cl.1967), § 111 provides that the taxpayer can exclude from income the amount that did not give rise to *some* tax benefit. *See Dobson v. Commissioner*, 320 U.S. 489, 505–506, 64 S.Ct. 239, 248–249, 88 L.Ed. 248 (1943).

*Id.* at 380 n. 12, 103 S.Ct. 1134 (emphasis added). Thus, in *Hillsboro* the Supreme Court interpreted section 111 of the Code as limiting application of the tax benefit rule to amounts for which no tax benefit was realized.

Our construction of the statute is consistent with this court's previous treatment of the rule as well. Under the "fundamentally inconsistent" test articulated in *Hillsboro*, we are to focus on the specific provisions of the Code that govern the transaction. *Hillsboro*, 460 U.S. at 390–91, 103 S.Ct. 1134. Our review includes not only section 111, but also the specific and detailed provisions of Subchapter L governing life insurance reserves. In *Allstate*, we concluded that a casualty insurance company was entitled to exclude from income amounts for which it took deductions to reduce its taxes in an earlier year, but for which it had in fact received *no* benefit. 936 F.2d at 1271. In that case, Allstate had received no benefit for $1,790,139 of the total amount it had deducted as losses in its 1969 tax return. *Id.* at 1273. Allstate had argued that it was unnecessary to include as income the portion of subrogation generated in 1971 corresponding to those earlier losses deducted without tax benefit. *Id.* The Federal Circuit agreed, concluding, under the provisions of the Code applicable to casualty insurance companies, that "[b]ecause it received *no* tax benefit for $1.79 million of its 1969 losses paid, Allstate may exclude the reimbursement of those losses from 1971 subrogation." *Id.* at 1275 (emphasis added). American Mutual has argued similarities between its case and *Allstate*. However, as the Court of Federal Claims noted, "casualty insurance companies are not life insurance companies." *Am. Mut.*, 46 Fed. Cl. at 454. This case is distinguishable because different underlying tax provisions are at issue and because a subrogation recovery is the type of "inconsistent" event that meets the tax benefit rule's preconditions and tests.

We have not found American Mutual's citation to certain Treasury Department Regulations persuasive. Nowhere does American Mutual direct the court's attention to the regulations' treatment of the rule in the context in which life insurance reserve deductions yield only a fractional benefit. The revenue rulings cited by American Mutual are similarly unhelpful.[3] Having failed to cite controlling au-

---

3. We leave for another day the issue of wheth-

er IRS revenue rulings are binding on this

thority in support of its position that American Mutual is entitled to a full dollar-for-dollar benefit, and in light of the binding authority discussed, *supra*, we conclude that the rule is inapplicable where the taxpayer receives at least "some" benefit for each dollar of life insurance reserve deduction taken.

American Mutual argues that even assuming the rule is inapplicable, equity demands that it be allowed to recover the amount for which its taxes exceeded its tax benefits. American Mutual points to *United States v. Skelly Oil Co.*, 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969) as controlling, arguing that in *Skelly* the Supreme Court limited the amount of a subsequent year's deduction (for repayment to customers of overcharges previously collected) to the amount of taxable income resulting from receipt of the charges in the earlier years. Thus, American Mutual argues that in *Skelly*, the Supreme Court held that the amount of deduction allowable in the year of repayment (payment to customers for overcharges) must match the amount of the prior increase in taxable income attributable to the amounts charged. American Mutual maintains, therefore, that in accordance with *Skelly* it must receive a refund corresponding to the amounts for which the reserve deductions reduced its income by less than a full dollar.

We do not agree with American Mutual's assertions that *Skelly* requires such a result. In *Skelly*, the taxpayer sought the equivalent of a double deduction. *Id.* at 684, 89 S.Ct. 1379. Skelly, a natural gas producer, settled claims of customers via repayments and took a deduction in a later year equal to the amount refunded. Skelly further sought a deduction of a percentage of that amount as a natural resource depletion at the statutorily provided rate of 27.5%. The Supreme Court rejected Skelly's interpretation of the Code, ·concluding that Congress could not have "intended to give taxpayers a deduction for refunding money that was not taxed when received." *Id.* at 685, 89 S.Ct. 1379.

Indeed, *Skelly* supports the Court of Federal Claims' determination that when a taxpayer receives some benefit per dollar deduction taken, application of the tax benefit rule would become redundant. Although directed toward the inclusionary component of the rule, *Skelly* states that, "There is no requirement that the deduction save the taxpayer the exact amount of taxes he paid because of the inclusion of the item in income." *Id.* at 685, 89 S.Ct. 1379. We conclude that American Mutual's challenge to the Court of Federal Claims' refusal to apply the rule is in no way supported by the Supreme Court's opinion in *Skelly*.

## *CONCLUSION*

 We conclude that because life insurance reserve releases are not "funda-

court, *see, e.g., Xerox Corp. v. United States,* 41 F.3d 647, 657 (Fed.Cir.1994) (stating that they are not), or whether such rulings are entitled to *Chevron* deference in accordance with the Supreme Court's recent decision in *United States v. Mead,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Finally, in oral argument counsel for American Mutual argued that *United States v. Cleveland Indians,* 532 U.S. 200, 121 S.Ct. 1433, 149 L.Ed.2d 401 (April 17, 2001) requires that the treasury regulations cited by American Mutual are

binding on this court because they are long continued and unchanged interpretations of statutes that remain unchanged in substance. *Id.* at 1444–45. Counsel seemed to imply that because section 111 was long unchanged in substance, this theory applied. Without commenting on the merits of counsel's theory in general, we note that life insurance taxation provisions of Subchapter L are as much at issue in our interpretation of this case as is section 111 thus, with the 1984 amendments to Subchapter L, the provisions at issue in this case are certainly not long unchanged.

mentally inconsistent" events and because American Mutual received a benefit from the reserve deductions taken, it cannot resort to the tax benefit rule to exclude from income amounts corresponding to release of those reserves. Accordingly, we need not determine whether the rule would apply had American Mutual not received a benefit for the reserve deductions taken. American Mutual's remaining arguments are therefore moot. Accordingly, the judgment of the Court of Federal Claims is

*AFFIRMED.*

### COSTS

No costs.